**FILED**

June 02, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ lad _____
                          DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

DRAFTKINGS INC., §
§
      Plaintiff, §   Misc. Action No.: 6:26mc351-
§             CRW-DNM
v. §
§   Underlying Case No. 1:24-cv-03077-NCM-
OSCAR JONES, §   VMS (E.D.N.Y.)
§
      Defendant. §

**MOVANT DRAFTKINGS INC.'S**
**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**
**DIRECTED TO OSCAR JONES PURSUANT TO FED. R. CIV. P. 45**

DraftKings Inc. ("DraftKings") files this miscellaneous action for an order to compel the production of documents and a deposition of Oscar Jones in response to a Subpoena to Testify at a Deposition in a Civil Action dated April 10, 2026 (the "Subpoena"), which Subpoena issued in the Eastern District of New York in connection with a matter captioned *Jacobs v. DraftKings Inc.*, Case No. 1:24-cv-03077-NCM-VMS (E.D.N.Y.) (the "Underlying Litigation"). This Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 45(c) as the Subpoena required compliance in this District. DraftKings complied with Local Rule CV-7(i) by discussing its Subpoena with Mr. Jones on May 29, 2026, and no agreement could be made because Mr. Jones stated in his response to DraftKings' meet and confer efforts that he will not provide any testimony in response to the Subpoena, and did not otherwise raise any substantive opposition to the instant motion.

**INTRODUCTION**

DraftKings is an online gaming company and the defendant in the Underlying Litigation. On April 13, 2026, DraftKings served the Subpoena on Mr. Jones. Mr. Jones is a critical witness

017373.0018 4907-9045-7233.6

in the Underlying Litigation; he is named in many allegations in the operative complaint, and accused of assisting an assault on the plaintiff in that matter, Mr. Jacobs, as well as "hack[ing]" Mr. Jacobs' account with DraftKings. The Subpoena sought the deposition of Mr. Jones, and the production of a targeted set of documents, those which were responsive to three requests. Mr. Jones attempted to evade service over the course of months and did not appear for his deposition or produce any documents. DraftKings now seeks the Court's assistance in compelling Mr. Jones' compliance.

## FACTUAL ALLEGATIONS

### I.   The Underlying Litigation

In March 2024, Steven Jacobs filed suit against DraftKings, which DraftKings removed to the United States District Court for the Eastern District of New York, with civil action number 1:24-cv-03077-NCM-VMS.

In April 2025, Steven Jacobs filed for leave to file a second amended complaint (the "SAC"). Mr. Jacobs contends that DraftKings engaged in a conspiracy with various non-parties, including Mr. Jones, to hack Mr. Jacobs' DraftKings account and assault Mr. Jacobs on a New York City subway platform. In the SAC, Mr. Jacobs alleged that Mr. Jones "made it abundantly clear . . . that Jones and [another individual] had received [Mr. Jacobs'] personal and financial information from DraftKings" and "[a] few days later," Mr. Jacobs was allegedly assaulted by a man who "identified" Mr. Jones as one of two "people that had sent [the assailant] and told [Mr. Jacobs] that he had to pay the money that he 'owed.'" (Case No. 1:24-cv-03077-NCM-VMS, Dkt. No. 47, Ex. A, ¶¶ 45, 47, 48; *see also* Declaration of Christopher J. Wiener ["Wiener Decl."], ¶ 3, Ex. B at 22-23.). On February 13, 2026, the Court granted that motion, making the

SAC the operative complaint in the Underlying Litigation. (*Id.*, Dkt. No. 102.)[1] DraftKings denies Mr. Jacobs' allegations – yet Mr. Jones' central role in the SAC necessitates that DraftKings take discovery from him.

## II.    DraftKings' Efforts to Serve Mr. Jones In Early 2026

DraftKings has sought to subpoena Mr. Jones on three separate occasions, and on every occasion Mr. Jones has attempted to evade service and made clear that he would not comply with any subpoena served on him.

DraftKings' first attempts took place in January and February 2026. On January 14, 2026, DraftKings issued a deposition subpoena on Mr. Jones, pursuant to Federal Rule of Civil Procedure 45, requesting production of relevant documents and his deposition. (Wiener Decl., ¶ 11, Ex. H.) DraftKings attempted to serve him with a subpoena on nine separate occasions, but Mr. Jones did not respond to emails and appeared to be avoiding service by hand. In particular, DraftKings attempted to serve that subpoena on January 14 (two attempts), 15, 16, and 17, 2026. (*Id.* at ¶ 12, Ex. I.) On January 14, 2026, the process server stated that the address attempted was a "[g]ood address per wife of subject." (*Id.*)

On January 15, 2026, Mr. Jones wrote to counsel for DraftKings making clear that he was deliberately avoiding service unless and until DraftKings agreed to help him with his own complaints against Mr. Jacobs in an explicit *quid pro quo*: "[b]e advised that subpoena or not, I simply will not participate in a system that does not even attempt to hold [Mr. Jacobs] responsible for his over the top fraudulent conduct. [¶] If you BCC me on a compelling complaint re: [Mr. Jacobs] that you, your firm, [DraftKings], or any other 'credible' professional files with the NY Grievance Committee . . . then I will give you the deposition you seek. [¶]

---

[1] Discovery is ongoing, and the close of fact discovery is set for July 10, 2026. (Underlying Litigation, Dkt. No. 113.)

Otherwise, I'll hold my testimony until the day that police physically drag me out of my house to comply." (Wiener Decl., ¶ 13, Ex. J.)

On January 28, 2026, DraftKings issued a second deposition subpoena to Mr. Jones. (Wiener Decl., ¶ 14, Ex. K.) DraftKings attempted to serve that subpoena by hand on January 30, 31, and February 2, 2026. (Wiener Decl., ¶ 15, Ex. L.) On January 30, 2026, DraftKings' process server stated that they "[s]poke to wife. . . She advised me he is out of town for at least a week. She texted him in front of me with date and by Zoom." (*Id.*) DraftKings was not successful in serving that second subpoena.

### III.    The Subpoena Served On Mr. Jones in April 2026

DraftKings issued its most recent subpoena on April 10, 2026. On April 13, 2026, the Subpoena was served on Mr. Jones. (Wiener Decl., ¶ 4, Ex. C.) That day the process server for the Subpoena visited Mr. Jones' residence. The process server's Affidavit of Service states, in part, as follows:

> Upon my arrival, I observed the witness playing in his front yard with his wife and children. When I exited my vehicle, Mr. Jones saw me with papers in my hand, and retreated quickly into his residence, abandoning his wife and children in their front yard.
>
> I told his wife that I had a subpoena and witness fee for Mr. Jones, and she went inside with Mr. Jones, abandoning one of their small children in the front yard with me. When she came back outside a couple minutes later, she advised me that she "told him to handle this" since it was not her business. She departed in her white Dodge Caravan with both children. The vehicle bore Nevada license plate []C6. Database records indicate that this vehicle belongs to the witness' wife.
>
> After approximately thirty minutes of ringing the doorbell and knocking on the door, Mr. Jones never came outside. When his wife returned to the residence, she pulled straight into the garage and closed the garage door.
>
> While waiting outside for Mr. Jones, a neighbor approached me and asked me if I was "waiting for Oscar." This combined with Mr. Jones' wife's earlier contact with me and the license plate of their vehicle, confirmed that this was indeed Mr. Jones' residence and that Mr. Jones was inside actively trying to avoid service.

> Having made positive identification of the witness, I left the instruments and witness fee tucked under the front mat of the Jones residence, clearly visible for Mr. Jones inside.

(Wiener Decl., ¶ 5, Ex. D.)

A copy of the subpoena along with the witness check was provided to Mr. Jones via drop service. The Affidavit of Service also included pictures of Mr. Jones at the property, and the copy of the Subpoena that was left at his front door. (*Id.* at 3-7.) Mr. Jones' wife later told the process server that Mr. Jones received and reviewed the Subpoena. (Wiener Decl., ¶ 8.)

In subsequent days, the process server made two more attempts to also contact Mr. Jones and Mr. Jones' wife but was not successful in handing the subpoena to him due to his multiple attempts to evade service. (Wiener Decl., ¶ 6.)

On April 22, 2026, counsel for DraftKings sent an email with the Subpoena to Mr. Jones at an email address that Mr. Jones had previously used to send his January 15, 2026 message to counsel for DraftKings. (Wiener Decl., ¶ 9, Ex. F.)

Shortly after those attempts, DraftKings provided the subpoena to the County Constable for another attempt at service. On April 27th, service was attempted. The Constable's return states that while the Constable was at Mr. Jones' residence, he knocked on the door. A child was heard saying, "Daddy, someone is at the door[,]" however, no one answered the door. (*Id.* at ¶ 7, Ex. E.) On April 28, 2026, the Constable again attempted service, but no one answered the door. (*Id.*) On April 30, 2026, the Constable attempted service for a third time, and Mr. Jones' wife answered the door stating that Mr. Jones was "in bed . . . and he couldn't come to the door." (*Id.*)

The Subpoena sought deposition testimony and the production of documents responsive to three categories to take place on May 4, 2026. On May 4, 2026, the room where the deposition was to be held was open at the noticed location, and counsel for the parties appeared remotely. (Wiener Decl., ¶ 10, Ex. G.) Counsel for the parties remained at the deposition for approximately

one hour before noting Mr. Jones' nonappearance and closing the deposition. (*Id.* at 2-5.)

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. The rule provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 45 establishes, among other things, nonparties' duties to respond to subpoenas. Rule 45(c) states that a subpoena may command, among other things, a person to attend a deposition, and to produce documents, electronically stored information, or tangible things.

The scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34. *See* Fed. R. Civ. P 45(d)(1); *611 Carpenter LLC v. Atl. Cas. Ins. Co.*, No. 1:23-CV-823-DII, 2024 WL 1977160, at *1 (W.D. Tex. Apr. 30, 2024); *Cunningham v. Concentrix Sols. Corp.*, No. 4:20-cv-00661, 2021 WL 425098, at *2 (E.D. Tex. Feb. 8, 2021) (holding that "[w]hen determining if a subpoena is relevant, courts apply the relevancy standard from Rule 26(b)(1)"). "[T]he bar for relevancy is low and includes any matter...that could bear on, any issue that is or may be in the case." *United States ex rel. Eichner v. Ocwen Loan Servicing LLC*, No. 4:19-CV-00524, 2024 WL 2922979, at *7 (E.D. Tex. June 10, 2024) (internal quotation marks omitted); *see also Camoco, LLC v. Leyva,* 333 F.R.D. 603, 606 (W.D. Tex. 2019). To evaluate if requested discovery is relevant and proportional, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Kilmon v. Saulsbury Industries, Inc.*, No. MO:17-CV-99, 2018 WL 5800757, at

*1 (W.D. Tex. Feb. 28, 2018).

If the subpoenaed party intends to object, objections must be served before the time specified for compliance or 14 days after the subpoena is served. *See* Fed. R. Civ. P. 45(d)(2)(B). In the Fifth Circuit, courts have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege. *See Waller v. Jet Specialty, Inc.*, No. MO:23-CV-00121-DC-RCG, 2024 WL 7050192, at *2 (W.D. Tex. Nov. 19, 2024) (internal citation omitted); *see also Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015).

Courts routinely compel compliance with valid subpoenas where, as here, a non-party has been properly served but fails to respond, object, or otherwise comply. *See DFW Dance Floors, LLC v. Suchil*, No. 3:22-CV-1775-N-BK, 2025 WL 1728023, at *2 (N.D. Tex. May 15, 2025). To succeed on a Rule 45 motion to compel subpoena compliance, a movant "must establish that the issued subpoena was valid, was properly served, and the recipient of the subpoena failed to respond or otherwise comply." *Kyle on Behalf of Estate of Kyle v. Saiz*, No. SA-22-CV-00023-XR, 2022 WL 4280905, at *1 (W.D. Tex. Aug. 4, 2022) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). If a movant "has made a *prima facie* showing that it issued a valid subpoena [a Court] may then issue an order requiring the nonparty to either comply with the subpoena [or, among other things] seek protection under Rule 45." *EB Holdings IL Inc. v. Ill. Nat'l Ins. Co.*, No. 4:21-mc-02650, 2021 WL 6134783, at *1 (S.D. Tex. Dec. 29, 2021).

## II.    Mr. Jones Must Comply with the Subpoena

DraftKings' Subpoena to Mr. Jones was properly issued by the Federal Court in the Eastern District of New York under the authority of Federal Rule of Civil Procedure 45.[2]

---

[2] The Subpoena complied with Rule 45 because it: (i) stated that it issued from the United States District Court for the Eastern of New York (ii) stated the title and civil-action number of the

Mr. Jones was properly served on April 13, 2026, requiring Mr. Jones to sit for a deposition and produce documents on May 4, 2026.

DraftKings is seeking plainly relevant information from Mr. Jones that is within the broad scope of Rule 26(b). First, DraftKings seeks to depose Mr. Jones, at which time he will be asked to provide his testimony regarding information that is otherwise within his sole possession as to his alleged actions as described in the SAC. Mr. Jones' alleged actions are a direct basis for the plaintiff's claims against DraftKings in the Underlying Action, and, thus information regarding Mr. Jones' actions goes directly to the merits and defenses in the Underlying Action. Second, DraftKings is seeking the production of documents responsive to three requested categories: (i) communications with or concerning DraftKings, (ii) communications concerning "any arrangement with [Mr.] Jacobs to place wagers on DraftKings Sportsbook Platform" on behalf of someone else; and (iii) communications concerning DraftKings' "alleged disclosure of [Mr.] Jacobs' personal information, money owned by [Mr.] Jacobs, and [Mr.] Jacobs' alleged March 30, 2023 confrontation as referenced in 42, 25-32, and 47 of the [SAC], respectively." (Wiener Decl., ¶ 3, Ex. B.) The information that DraftKings is seeking in the Subpoena is targeted, and goes to core issues of liability (which DraftKings denies) in the Underlying Litigation. Thus, the Subpoena seeks relevant and discoverable information; Mr. Jones should be ordered to comply.

Mr. Jones has demonstrated a complete failure to fulfill his obligations to properly respond to the Subpoena. He did not appear for his deposition at the noticed date and time, or produce any responsive documents. (*See* Wiener Decl., ¶ 10, Ex. G.) In addition, although Mr.

---

Underlying Litigation; (iii) commanded the production of documents and electronically stored information; (iv) set out the verbatim text of Rule 45(d) and (e); and (v) required compliance at a location within 100 miles of the location where Mr. Jones resides. (*See* Wiener Decl., ¶ 3, Ex. B.)

Jones was served with the Subpoena more than 45 days ago, he has failed to serve objections, move to quash the Subpoena, or move for protective order within the time allotted by the Federal Rules. Mr. Jones has thereby waived any objection he may have had with respect to the deposition or the production of responsive documents. Finally, Mr. Jones has affirmatively represented that he will not voluntarily comply with any subpoena or even court order to provide information regarding the Underlying Litigation absent intervention, including as recently as May 31, 2026 in response to DraftKings' attempts to meet and confer regarding the instant motion. (Wiener Decl., ¶ 13, Ex. J) ("I'll hold my testimony until the day that police physically drag me out of my house to comply"); (*id.* at ¶ 17, Ex. M ("I'll be direct: short of [a requested] grievance being filed, I will not appear, regardless of any court order. I do not dispute the court's authority, but as a practical matter, enforcing a deposition subpoena against me in Texas is unlikely to produce the outcome [counsel for DraftKings] appears to want").

DraftKings has made efforts to accommodate Mr. Jones and minimize any burden on him. (Wiener Decl., ¶ 9, Ex. F.) However, Mr. Jones affirmatively rejected those efforts. Mr. Jones' refusal to participate deprives DraftKings of highly probative evidence that goes to core allegations in the Underlying Litigation with the close of fact discovery fast approaching on July 10, 2026. Accordingly, DraftKings respectfully requests the Court to compel Mr. Jones to immediately comply with the Subpoena by producing all responsive documents and communications, and by appearing for a deposition.

### III.    DraftKings is Entitled to Recovery Its Attorneys' Fees

As discussed above, Rule 45 required Mr. Jones to respond to the Subpoena by May 4, 2026. Mr. Jones is a student at Baylor University School of Law, and is presumed to understand his legal obligations and to respect the authority of the Court. (Wiener Decl., ¶ 16.) Accordingly, DraftKings requests that the Court also award DraftKings its reasonable attorneys'

fees associated with bringing this motion. Under Rule 37, once a motion to compel is granted, the Court is required to award attorneys' fees. Specifically, after giving the compelled party an opportunity to be heard, the Court must "require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Rule 37(a)(5)(A). In this case, there is no question that Mr. Jones has relevant information but has failed to uphold his duty to respond to the Subpoena. Accordingly, the Court should award DraftKings its reasonable attorneys' fees as Mr. Jones' conduct necessitated this motion.

## CONCLUSION

For the reasons stated above, DraftKings requests that the Court grant the requested relief and compel Mr. Jones to attend his deposition and produce documents responsive to the Subpoena.

DATED: June 1, 2026

/s/ J. James Cooper

J. James Cooper
TX Bar No. 04780010
REED SMITH LLP
401 Congress Ave., Suite 1800
Austin, TX 78701
Telephone: (713) 469-3879
Fax: (713) 469-3899
jcooper@reedsmith.com


Richard R. Patch, (*pro hac vice* forthcoming)
Rees F. Morgan, (*pro hac vice* forthcoming)
Christopher J. Wiener (*pro hac vice* forthcoming)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:      ef-rrp@cpdb.com
            ef-rfm@cpdb.com
            ef-cjw@cpdb.com

Counsel for Defendant
DRAFTKINGS INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 1, 2026, I forwarded the foregoing document to the Clerk of the Court for the U.S. District Court, Western District of Texas, by overnight mail. I hereby certify that co-counsel will serve the document on all parties by a manner authorized by Federal Rule of Civil Procedure 5(b)(2) by mail.

/s/ J. James Cooper
J. James Cooper

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for DraftKings Inc. has attempted to resolve this dispute with non-party Oscar Jones. At the time of filing, however, Mr. Jones continued to ignore his obligations under the Federal Rules of Civil Procedure and has stated that he will not provide any testimony in response to the subpoena at issue in this motion. Mr. Jones did not raise any substantive opposition to the motion in his responsive communication to counsel for DraftKings Inc.

/s/ J. James Cooper
J. James Cooper



JIM COOPER
713.469.3619
REED SMITH LLP - HOUSTON
1221 MCKINNEY STREET
HOUSTON TX 77010

**1 LBS**                    **1 OF 1**

DWT: 13,12,3

**SHIP TO:**
U.S. DISTRICT CLERK'S OFFICE
ROOM 380
800 FRANKLIN AVE.
**WACO TX 76701**

# TX 767 0-12

# UPS NEXT DAY AIR

**1**

TRACKING #: 1Z A22 371 01 9778 6398

BILLING: P/P

Client / Matter / Attorney Number: 406514/00003/015323
Attorney Name: Jim Cooper
CS 26.0.05.     WNTNV50 23.0A 05/2026*

## RECEIVED

JUN 0 2 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY

DEPUTY CLERK